UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| Chambers of<br>**GEORGE L. RUSSELL, III**<br>United States District Judge | 101 West Lombard Street<br>Baltimore, Maryland 21201<br>410-962-4055 |

September 11, 2015

MEMORANDUM TO PARTIES RE:     <u>Anand Venkatraman v. Allegis Group, Inc.</u>
                              Civil Action No. GLR-15-62

Dear Parties:

Pending before the Court is Defendant's, Allegis Group, Inc. ("Allegis"), Motion to Dismiss Plaintiff's Complaint. (ECF No. 5). The Motion is ripe for disposition. The Court, having reviewed the Motion and supporting documents, finds no hearing necessary pursuant to Local Rule 105.6 (D.Md. 2014). For the reasons outlined below, Allegis's Motion to Dismiss will be granted.

Plaintiff Anand Venkatraman, an Asian-American male, is a former employee of TEKsystems, Inc. ("TEKsystems"), a subsidiary of Allegis. On September 6, 2012, Venkatraman signed a contract with TEKsystems as a Senior Developer to work on a project for Allegis. Allegis paid TEKsystems $80 per hour for Venkatraman's services under the contract, of which $65 per hour was paid to Venkatraman. On September 7, 2012, Venkatraman requested a corp-corp agreement, in which Venkatraman would work as an independent contractor for TEKsystems and bill Allegis for his work directly through his company. James May of TEKsystems stated TEKsystems no longer entered corp-corp agreements.

In December 2012, Venkatraman began working on another project for Allegis. On January 30, 2013, Venkatraman's supervisor, Jon Foley of Allegis, informed him that James Brazil, a white male, would be hired to help him with the project, Allegis would pay TEKsystems $100 per hour, and Brazil would receive $80 per hour, though Venkatraman would be leading the project and was required to train Brazil. Brazil was not interviewed for the position, did not complete a technology assessment, did not have any prior experience with the relevant technology, and did not complete a background check. Venkatraman was required to work longer hours than Brazil. Brazil was unable to do the simple tasks assigned to him by Venkatraman. Venkatraman later learned that Brazil signed a corp-corp agreement with TEKsystems. On February 4, 2013, Venkatraman inquired about why he was not permitted enter into a corp-corp agreement in September 2012. Venkatraman was told he would be terminated if he asked any more questions.

On April 3, 2013, Venkatraman contacted TEKsystems to request a pay rate increase to $80 per hour. On April 4, 2013, Allegis offered Venkatraman a full-time employment position with an annual salary of $107,000. Venkatraman asked whether he could remain as a contractor with TEKsystems to complete the project for Allegis, but Foley said no. Consequently, Venkatraman accepted the full-time position with Allegis. During his full-time employment with Allegis, Brazil told Venkatraman that TEKsystems only offered corp-corp agreements to white people who work on projects for Allegis. When Venkatraman stated TEKsystems's actions constituted discrimination, Brazil stated "[i]n a perfect world, as a lead you will be making more money than me but we don't live in a perfect world, so suck it up and move on." (ECF No. 1). On June 15, 2013, requested to be converted back to a contractor with Allegis

with a corp-corp agreement similar to that of Brazil. On June 24, 2013, Allegis, however, refused, stating it does not enter into corp-corp agreements.

On July 2, 2013, May informed Venkatraman that TEKsystems would only offer him a maximum of $70 per hour. Venkatraman inquired about a corp-corp agreement and requested that Allegis pay $100 per hour for his services. Instead, Allegis required Venkatraman to work through Populus Group instead of TEKsystems. On July 12, 2013, Venkatraman signed a compensation agreement with Populus Group accepting $70 per hour. On July 22, 2013, Venkatraman joined Populus Group as a contractor to complete the project for Allegis. On September 6, 2013, Foley informed Venkatraman that Allegis was making over-payments into Venkatraman's bank account. Venkatraman was asked to repay the excess amount. The payroll department then sent Venkatraman's bank account information to his supervisor. Foley requested that Venkatraman make the repayment by giving him a personal check paid to the order of Allegis Group.

On September 12, 2013, Venkatraman was unable to access his timesheet to enter the hours he worked on the project for Allegis. On December 10, 2013, Venkatraman was informed that his contract with Populus would be terminated at the end of January 2014. Venkatraman's work order with Allegis stated it ended on December 31, 2013, and was not extended to the end of January 2014. Again, on December 17, 2013, Venkatraman timesheet was not approved. On January 4, 2014, Venkatraman was unable to enter his hours of work completed that day. Allegis was informed of the issue, and Venkatraman was told the issue had been resolved, but again on January 13, 2014, the issue occurred again.

On January 28, 2014, Foley informed Venkatraman that his contract would be terminated on January 29, 2014. Brazil, however, continued to work for Allegis as a contractor under a corp-corp agreement. On July 19, 2014, Venkatraman filed a charge with the Maryland Commission on Civil Rights. On December 8, 2014, Venkatraman received a right to sue letter from the U.S. Equal Employment Opportunity Commission. On January 9, 2015, Venkatraman filed a Complaint alleging employment discrimination based on his race and nationality in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e et seq. (2012) (Counts 1 and 3), invasion of privacy (Count 2), and negligent hiring and malpractice (Count 4). On February 18, 2015, Allegis filed a Motion to Dismiss. (ECF No. 5). On February 24, 2015, Venkatraman filed an Opposition to the Motion. (ECF No. 9). On March 10, 2015, Allegis filed a Reply to the Opposition. (ECF No. 10).

A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not state "a plausible claim for relief." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013). Pro se pleadings, however, are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010). In considering a Rule 12(b)(6) motion, the court must construe the complaint in the light most

favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. See Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 (4th Cir. 1999) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)).

**Employment Discrimination**

Venkatraman alleges Allegis discriminated against him in terms of opportunities and compensation. He further alleges Allegis retaliated against him for complaining about the alleged discrimination. The Court will address these allegations in turn.

First, Allegis argues Venkatraman's discrimination claims are untimely. Title VII of the Civil Rights Act of 1964 provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2012). In Maryland, a plaintiff must file a discrimination charge with the EEOC within 300 days after the alleged unlawful employment practice. Davis v. Balt. Hebrew Congregation, 985 F.Supp.2d 701, 713 (D.Md. 2013) (citing Prelich v. Med. Res., Inc., 813 F.Supp.2d 654, 661 (D.Md. 2011)). Venkatraman filed his charge on July 19, 2014. The earliest date within the limitations period is September 22, 2013. Thus, only acts by Allegis since September 22, 2013 can form the basis of Venkatraman's Title VII claim. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."). Venkatraman claims he was discriminated against in opportunities to enter into a corp-corp agreement with TEKsystems. Venkatraman, however, inquired about entering into such an agreement with TEKsystems prior to September 22, 2013. The inquiries, therefore, cannot form the basis of his Title VII claim. Accordingly, the Court will grant the Motion to Dismiss with regard to Venkatraman's claim of discrimination in opportunities.

Regarding Venkatraman's claim for discriminatory compensation, under the Lilly Ledbetter Fair Pay Act of 2009, which amended Title VII, an actionable unlawful employment practice occurs "when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice." 42 U.S.C. § 2000e-5(e)(3)(A). As such, a plaintiff who alleges he received a discriminatory paycheck within 300 days prior to filing of his charge has sufficiently alleged a Title VII discrimination claim. Kramer v. Bd. of Educ. of Balt. Cty., 788 F.Supp.2d 421, 427 (D.Md. 2011) (citing Johnson v. Portfolio Recovery Assoc., LLC, 682 F.Supp.2d 560, 585 (E.D.Va. 2009)). Therefore, Venkatraman may be able to allege a timely Title VII claim for each paycheck issued to him after September 22, 2013.

A prima facie case of disparate treatment requires that a plaintiff demonstrate that he "(1) is [a] member of a protected class; (2) held a job similar to jobs held by those outside the protected class; and (3) he was paid less than these similarly situated employees who were outside the protected class." Watson v. HSU Dev., Inc., No. GJH-13-2071, 2015 WL 3545623, at *3 (D.Md. June 5, 2015) (alteration in original) (quoting Darden v. Hous. Auth. of Balt., No. 06-216, 2006 WL 3231964, at *6 (D.Md. Nov. 7, 2006)). To survive a motion to dismiss, however, a plaintiff need not establish a prima facie case. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-11 (2002) (concluding that "the prima facie case . . . is an evidentiary standard, not a pleading requirement"). Instead, a plaintiff must plead facts sufficient to

state each element of the asserted claim. <u>Bass v. E.I. Dupont De Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir. 2003).

Allegis argues Venkatraman's discriminatory compensation claim must be dismissed because he has failed to plead facts that he was similarly situated to Brazil. Venkatraman alleges that, between January 30, 2013, and April 4, 2013, both he and Brazil were contractors with TEKsystems, but he was paid $65 per hour and Brazil was paid $80 per hour. Because this allegedly disparate treatment occurred before September 22, 2013, the allegations cannot form the basis of Venkatraman's Title VII claim. After September 22, 2013, however, Venkatraman was a contractor with Populus Group, where he was paid $70 per hour. While Venkatraman has alleged that TEKsystems is a subsidiary of Allegis, he does not allege whether there is any relationship between Populus Group and Allegis or TEKsystems. Because Venkatraman and Brazil were contractors for seemingly different companies, Venkatraman has failed to allege that he was similarly situated to Brazil. As such, the Court will grant the Motion to Dismiss as to Venkatraman's discriminatory compensation claim.

Lastly, Venkatraman alleges Allegis retaliated against him for complaining about his allegedly discriminatory compensation and Brazil's poor performance. To state a Title VII claim for retaliation, Venkatraman must allege that: "(1) he engaged in protected activity; (2) an adverse employment action was taken against him; and (3) there was a causal link between the protected activity and the adverse action." <u>Laber v. Harvey</u>, 438 F.3d 404, 432 (4th Cir. 2006). The plain language of Title VII limits "protected activities" to a distinct few activities, including opposing an unlawful employment practice. <u>See</u> 42 U.S.C. § 2000e–3(a). Venkatraman alleges that he sent an email sent to May on January 24, 2014, requesting to speak to him about his "discrimination concerns." (ECF No. 1). Further, Venkatraman alleges Allegis retaliated against him on September 12, 2013, December 17, 2013, January 6, 2014, and January 13, 2014 – <u>before</u> he sent the email to May. The Court, therefore, finds Venkatraman has failed to allege a causal link between his complaints and any adverse action. Accordingly, the Court will grant the Motion to Dismiss as to this claim.

**Invasion of Privacy**

Allegis argues Venkatraman's invasion of privacy should be dismissed because he fails to allege an offensive, public disclosure of private information. Maryland recognizes the tort of invasion of privacy, including unreasonable publicity given to another's private life. <u>See</u> <u>Carr v. Watkins</u>, 177 A.2d 841, 846 (Md. 1962). The claim requires publicity, which entails the public disclosure the private facts. <u>Wimbush v. Kaiser Found. Health Plan of the Mid Atl. States, Inc.</u>, No. TDC-14-0525, 2015 WL 2090654, at *10 (D.Md. May 4, 2015) (quoting <u>Hollander v. Lubow</u>, 351 A.2d 421, 426 (Md. 1976)). "It is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." <u>Furman v. Sheppard</u>, 744 A.2d 583, 588 (Md.Ct.Spec.App. 2000) (alteration in original) (quoting <u>Pemberton v. Bethlehem Steel Corp.</u>, 502 A.2d 1101, 1118 (Md.Ct.Spec.App. 1986)). Venkatraman alleges his personal bank account information was communicated to two employees of Allegis. The Court finds that such a disclosure is not public. Accordingly, the Court will grant the Motion to Dismiss as to the invasion of privacy claim.

**Negligent Hiring and Malpractice**

Allegis argues Venkatraman's negligent hiring claim should be dismissed because he fails to allege that he suffered an injury. To state a claim for negligent hiring or retention, a plaintiff must allege "that he suffered from a tortious act and that the employer of the individual who committed the tort acted negligently towards the plaintiff (i.e. owed and breached a duty thereby causing harm) in hiring or retaining that individual." Armour v. Bd. of Educ. of Prince George's Cty., No. PJM 11-2855, 2012 WL 3257653, at *5 (D.Md. Aug. 6, 2012)

Venkatraman alleges that he suffered emotional distress due to Brazil's poor performance, requiring him to work additional hours. (See Compl. Ex. 5, ECF No. 1) (stating he felt "really demoralized to be on [the same team as Brazil]"). To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must show four elements: (1) intentional or reckless conduct; (2) extreme and outrageous conduct; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress. Harris v. Jones, 380 A.2d 611, 614 (Md. 1977); Arbabi v. Fred Meyers, Inc., 205 F.Supp.2d 462, 465-66 (D.Md. 2002). In Maryland, however, a claim for IIED may lie only where the defendant's conduct "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Russell v. Russel Motor Cars Inc., 28 F.Supp.3d 414, 420 (D. Md. 2014) (quoting Harris, 380 A.2d at 614). The Court finds that there is no indication that Brazil's allegedly poor performance was extreme and outrageous. Because Venkatraman has failed to allege he suffered an actionable injury or that Brazil committed a tortious act, the Court will grant the Motion to Dismiss as to the negligent hiring claim.

For the foregoing reasons, Allegis's Motion to Dismiss (ECF No. 5) is GRANTED. The Complaint is DISMISSED. Despite the informal nature of this memorandum, it shall constitute an Order of this Court, and the Clerk is directed to docket it accordingly. The Clerk is also directed to CLOSE this case and mail a copy of this Order to Mr. Venkatraman at his address of record.

Very truly yours,

/s/
_____
George L. Russell, III
United States District Judge